IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. S1-4:18-CR00565-CDP (JMB) |
| ) | |
| v. ) | |
| ) | |
| 3-CHRISTOPHER NICHOLAS PIPES, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS (DOC. #574)**

COMES NOW the United States, through its attorneys Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri and Angie E. Danis, Assistant United States Attorney for said District, and responds to defendant Christopher Pipes's Motion to Suppress Statements (Doc. #574). In support of its response, the Government states as follows:

**FACTUAL BACKGROUND**

On or about June 28, 2018, defendant Christopher Pipes (hereinafter "defendant" or "Pipes") was charged by way of a suppressed Indictment with conspiring to distribute over 400 grams of fentanyl, in violation of Title 21, United States Code, Sections 846 and 841(a), and aiding and abetting the distribution of fentanyl, resulting in death, in violation of Title 21, United States Code, Section 841(a).

As part of a roundup operation, 17 search warrants were executed at multiple residences associated with the various defendants in this case. On or about July 18, 2018, Pipes was arrested on the aforementioned Indictment. Based on the findings from the execution of these search

1

warrants, on August 9, 2018, Pipes was additionally charged with being a felon in possession of one or more firearms, in violation of Title 18, United States Code, Section 922(g).

Upon his arrest on July 18, 2018, Pipes was conveyed to headquarters for the Drug Enforcement Administration (DEA), located in downtown St. Louis.  The Government concedes, as is seen throughout his interview, that Pipes was only wearing shorts and had neither a shirt nor shoes while he was being questioned.  The entirety of the interactions between law enforcement and Pipes was captured via audio and video recording.

The conversations with Pipes are divided into three parts[1].  Initially, Pipes spoke with FBI Special Federal Officers (SFOs) Michael Betz and Thomas Strode during the first part of his interview (hereinafter "part one"), which lasted approximately 24 minutes before Pipes asked to be moved to another room, fearing that other co-defendants might be able to hear him.  SFO Betz properly advised Pipes of his *Miranda* rights upon beginning part one of the questioning.

After approximately 24 minutes, Pipes was transferred to a second room, where he was questioned by FBI Special Agent Andrew Frank and SFO Strode.  Once again, SFO Strode read Pipes his *Miranda* warnings, which Pipes acknowledged he understood before continuing to speak with investigators.  This portion of the interview in the second interview room, hereinafter referred to as "part two," lasted approximately 46 minutes.  At the conclusion of this portion, SFO Strode was able to locate a t-shirt and flip-flop sandals for Pipes to wear while being transported to the courthouse.

It is the Government's position that all interactions between law enforcement and Pipes in which any interrogation takes place are captured on audio and video, which will be provided to the Court to review.  As the evidence will demonstrate, Pipes never requested counsel prior to any

---

[1] The third part of the Pipes interview consists of him putting on a t-shirt and leaving the interview room.  No questioning occurs during this time and, therefore, part three will not be addressed in this Response.

questioning, even after being *Mirandized* twice. The Government does not dispute any of the transcribed portions of the interview which counsel for Pipes has included in his Motion to Suppress. Rather, the Government disputes their characterization as "threatening" and asserts that this Court should look to the totality of the interview in rendering Pipes's statements voluntary and admissible.

## ARGUMENT

A statement is rendered involuntary if there are threats, violence, or express or implied promises sufficient enough to overbear Defendant's will and critically impair his capacity for self-determination. *Simmons v. Bowersox,* 235 F.3d 1124, 1132 (8th Cir. 2001). Courts weigh the voluntariness of a confession based on the totality of the circumstances. *United States v. LeBrun,* 363 F.3d 715, 724 (8th Cir. 2004) (en banc). Characteristics and/or circumstances courts take into consideration when assessing voluntariness are:

- Age, *Haley v. Ohio*, 332 U.S. 596 (1948);
- Lack of education, *Payne v. Arkansas*, 356 U.S. 560 (1958); *Fikes v. Alabama*, 352 U.S. 191 (1957);
- Lack of any advice to the accused of his constitutional rights, *Davis v. North Carolina*, 384 U.S. 737 (1966);
- Length of detention, *Chambers v. Florida*, 309 U.S. 227 (1940);
- Repeated and prolonged nature of the questioning, *Ashcraft v. Tennessee*, 322 U.S. 143 (1944); and
- Use of physical punishment such as the deprivation of food or sleep, *Reck v. Pate*, 367 U.S. 433 (1961).

*Hall v. Wolff*, 539 F.2d 1146, 1150–51 (8th Cir. 1976). The government bears the burden of proving by a preponderance of the evidence that Defendant's statements were voluntary. *United States v. LeBrun,* 363 F.3d at 724.

## ARGUMENT

**I.     Defendant Pipes Never, Unequivocally or Otherwise, Requested Counsel Prior to Questioning, and his Motion to Suppress Should be Denied on This Point.**

3

The entire recording with defendant is devoid of any evidence that he requested counsel at any point during his interaction with law enforcement on July 18, 2018.  When a suspect requests counsel during an interrogation, police must cease questioning until counsel has been made available or the suspect reinitiates communication with the police.  *Edwards v. Arizona*, 451 U.S. 477, 484 (1981).  If Defendant ambiguously makes mention of invoking counsel such as "I guess I need to get a lawyer," the Supreme Court and Eighth Circuit have held such statements that are "ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel … do not require the cessation of questioning." *Davis v. United States*, 512 U.S. 452 (1994); *United States v. Havlik*, 710 F.3d 818 (8th Cir. 2013).  Not even an ambiguous request for counsel occurred in this case.  As such, defendant's motion should be denied on this point.

    **II.**    **Defendant Pipes's Feeling Cold During Interview Is Not Sufficient to Overbear his Free Will and Render his Statement Involuntary, and his Motion to Suppress Should be Denied on This Point.**

Pipes did not have a shirt or shoes during his questioning at DEA headquarters.  In the recording, Pipes twice references being cold.  The question before this Court must be if this constituted punishment or deprivation such that it impaired his ability for self-determination. *United States v. LeBrun*, 363 F.3d at 725-726.  The Eighth Circuit recognized that "this is a very demanding standard." *Id.* The Supreme Court acknowledged that the standard was met in cases that included,

- Physical brutality, *Brown v. State of Mississippi*, 297 U.S. 278 (1936);
- Threat of mob violence, *Payne v. State of Arkansas*, 356 U.S. 560 (1958);
- Thirty-six hours of consecutive questioning, *Ashcraft v. State of Tennessee*, 322 U.S. 143 (1944);
- Threats against defendant's family, *Harris v. State of South Carolina*, 338 U.S. 68 (1949); and
- Vomiting blood, removal from the hospital by wheelchair, and holding defendant

4

incommunicado, *Reck v. Pate*, 367 U.S. 433 (1961).

The Court must examine the totality of the circumstances in and surrounding the interview with Pipes.  However, the Government contends that being shirtless inside of DEA headquarters does not give rise to so much physical punishment or deprivation as to overbear the will of the defendant or critically impair his capacity for self-determination.  As such, defendant's Motion should be denied as to this point.

### III. Telling the Defendant that He Was Subject to Mandatory Life Imprisonment, Which Was an Accurate Statement of the Law at the Time, Did not Constitute Threats or Coercion.

Counsel for defendant relies primarily on *United States v. Lopez*, 437 F.3d 1059 (10th Cir. 2006) in contending that Pipes's statement should be rendered involuntary.  However, the *Lopez* case is distinguishable from the present case in a number of substantial ways.  During his first interview with law enforcement, *Lopez* asked to speak with his mother before talking to investigators and had not eaten and could not eat solid food due to an injury sustained outside of police custody.  Furthermore, agents grossly exaggerated the evidence against *Lopez* when speaking with him, telling him there were six eyewitnesses against him to a murder (when there were only two) and that a gunshot residue test performed on him had come back positive (even though agents did not yet have the results).  Perhaps most importantly, agents advised *Lopez*, "if you cooperate, you know…you could be looking at six years.  And if you don't cooperate and give us answers, you could be looking at 60 years." *Id.* at 1061.  Agents went further and wrote both of these numbers on a piece of paper to emphasize their point to *Lopez*.  Lastly, their interview with *Lopez* lasted several hours.

In their interview with Pipes, agents in the present case told him that he was facing mandatory life (an accurate statement of the law prior to the enactment of the First Step Act) and

5

that his best option for leniency was cooperation, but he was never promised any specific numbers and was told at all times that the disposition would ultimately be up to the attorneys. All representations made by agents in the present case are allowable under current case law in this circuit rendering statements voluntary and admissible, and no statements made by agents amounted to "threats" or coercion. Law enforcement may initiate conversations on cooperation without rendering a confession involuntary. *Tippitt v. Lockhart*, 859 F.2d 595, 597 (8th Cir. 1988); *Rachlin v. United States*, 723 F.2d 1373 (8th Cir.1983); *United States v. Williams*, 479 F.2d 1138 (4th Cir. 1973); and *United States v. Vera*, 701 F.2d 1349 (11th Cir. 1983). Courts have held that officers may promise to make a defendant's cooperation known to the prosecutor and may even be able to make and breach certain promises without rendering a resulting confession involuntary. *Tippitt v. Lockhart*, 859 F.2d 595, 597 (8th Cir. 1988); *United States v. Ferrara,* 377 F.2d 16 (2nd Cir. 1967). As such, defendant's Motion should be denied on this point.

## CONCLUSION

WHEREFORE, having fully considered the foregoing, the Government respectfully requests this Court enter an Order denying Defendant's Motion to Suppress Statements.

    Respectfully submitted,

    JEFFREY B. JENSEN
    UNITED STATES ATTORNEY

    */s/ Angie E. Danis*
    ANGIE E. DANIS, #64805MO
    LISA M. YEMM, #64601MO
    Assistant United States Attorneys
    Angie.Danis@usdoj.gov
    Lisa.Yemm@usdoj.gov

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 18th day of November, 2019, the foregoing was filed electronically with the Clerk of the Court to be served by way of the Court's electronic filing system upon counsel for the defendant.

              */s/ Angie E. Danis*
              ANGIE E. DANIS, #64805MO
              LISA M. YEMM, #64601MO