UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  S1-4:18 CR 565-3 CDP (JMB) |
| | ) | |
| CHRISTOPHER NICHOLAS PIPES, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**[1]

Currently before the Court is Defendant Christopher Nicholas Pipes's Motion to Suppress Statements.  (ECF No. 574)  The government opposes the motion.  (ECF No. 633)  For the reasons outlined below, the undersigned recommends that the Court deny the motion.

**INTRODUCTION AND RELEVANT PROCEDURAL BACKGROUND**

The Superseding Indictment in this case alleges a large-scale drug trafficking conspiracy involving numerous defendants.  That Indictment also alleges other crimes including money laundering and firearms offenses.  The discovery is voluminous, detailed, and complex.  As such, the Court issued a scheduling order that contemplated filing pretrial motions in phases.  The first phase covered legal motions that would not require any evidentiary hearings to resolve.  The second phase covered electronic surveillance issues, such as issues related to wiretap orders.  The third phase covered any remaining suppression motions, discovery motions, and severance

---

[1] Pretrial matters in this case have been referred to the undersigned United States Magistrate Judge, under 28 U.S.C. § 636(b).

motions.  The present motion to suppress was filed pursuant to the third and final phase of pretrial motions.

Pipes is charged in three counts of the Superseding Indictment.[2]  Count I charges Pipes with conspiracy to distribute fentanyl, in violation of 21 U.S.C. § 846.  Count IV charges him with distribution of fentanyl, resulting in the death of a person referred to as C.P., in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C).  Count XVII charges him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  The government also filed an Information and Notice of Enhanced Sentence which would subject Pipes to a mandatory term of life upon conviction of the crime alleged in Count IV.

On January 23, 2020, the Court held an evidentiary hearing on Pipes's motion.  Pipes was present with his attorney, John Stobbs; the government was represented by AUSAs Angie Danis and Lisa Yemm.  The government offered the testimony of one witness, St. Louis Metropolitan Police Department ("SLMPD") Detective Michael Betz.  The government also introduced two exhibits.  Government's Exhibit 1 was a DVD that included audio and video-recorded interviews of Pipes following his arrest on July 18, 2018.  Government's Exhibit 2 was a copy of an "Advice of Rights" form signed by Pipes, Det. Betz, and another detective.  Mr. Stobbs cross-examined Det. Betz extensively.  Neither party requested leave to file a post-hearing memorandum.  The undersigned requested a transcript of the evidentiary hearing before deciding any of the issues presented in Pipes's Motion to Suppress Statements.  On January 24, 2020, an official transcript was posted in the CM/ECF system.  Accordingly, the matter is now ready for disposition.

---

[2] Pipes is also serving a term of Supervised Release in this District following a 2016 conviction and sentence for being a felon in possession of a firearm.  See United States v. Pipes, Case No. 4:15 CR 191 CDP.

Based on the testimony and evidence adduced at the evidentiary hearing, having had the opportunity to observe the demeanor and evaluate the credibility of the witness, and having fully considered the exhibits and the parties' arguments and written submissions, the undersigned makes the following findings of fact, conclusions of law, and recommendation.

## FINDINGS OF FACT

Michael Betz is a detective with the St. Louis Metropolitan Police Department ("SLMPD") with about 18 years of experience.  Det. Betz is also a Special Federal Officer with the Federal Bureau of Investigation ("FBI").

Pipes was initially charged in this matter by a suppressed indictment on June 28, 2018. Det. Betz was involved in the investigation that resulted in the charges against Pipes.  On July 18, 2018, Det. Betz and other officers conducted a "roundup" operation to arrest Pipes and numerous co-defendants.  Officers arrested Pipes during the roundup and transported him to the Drug Enforcement Administration ("DEA") headquarters building in the City of St. Louis for booking and questioning.  Although Det. Betz did not personally arrest Pipes, he was present at the DEA and participated in questioning Pipes.

According to Det. Betz, Pipes was placed in an interview room that was part of the booking and processing area of the DEA building.  Det. Betz was not with Pipes at all times while Pipes was in custody at the DEA, but he testified that, prior to the evidentiary hearing, he consulted with the other members of the investigation team and confirmed that Pipes never requested a lawyer.  Det. Betz further testified that, had Pipes requested a lawyer, he would have ceased any interview.  Although he was not certain, Det. Betz testified that he likely began his interactions with Pipes "relatively quickly" upon Pipes's arrival at the DEA.

The interview of Pipes was conducted in two parts because Pipes and the detectives

present were concerned that some of Pipes's co-defendants, who were being held nearby, might overhear anything that Pipes said.  For that reason, the first part of the interview was terminated and Pipes was moved to another interview room in the DEA building.  Both parts of the interview were video and audio recorded.  (See Gov't Exh. 1)

There were two investigators present for both parts of the interview.  During the first part, Det. Betz and Det. Thomas Strode were present, with Det. Betz leading the interview.  During the second part, Det. Strode and FBI Special Agent Andrew Frank were present, with Det. Strode leading the interview.

Pipes was only wearing shorts when he was arrested and brought to the DEA—he had on no shoes, socks, or shirt during both parts of his interview.  Pipes asked for clothes and at the beginning of the first part of his interview, but he remained shirtless and shoeless until the conclusion of the second part when he was given a t-shirt and sandals.

Pipes was read his Miranda rights from a form at the outset of both parts of his interview.  Each time, Pipes acknowledged his rights and agreed to answer questions.  The Advice of Rights form from the first part of the interview was offered as Government's Exhibit 2.  That form is dated July 18, 2018, with a time of 9:27 a.m.  The top part of the form references the basic Miranda rights.  Below the Miranda rights is a section entitled "WAIVER OF RIGHTS," that Pipes signed, indicating that someone read his rights to him, that he understood his rights, and that he was "willing to freely and voluntarily answer questions without a lawyer present."  (Id.) The form was witnessed and signed by Det. Betz and Det. Strode.  The government concedes that the Advice of Rights form from the second part of the interview was lost or misplaced, but the video recording clearly reflects that Pipes was properly Mirandized and again signed a waiver of his rights.

4

Pipes was not restrained during either part of his interview[3] and no officer displayed any weapons or physically threatened or intimidated Pipes.  Throughout both parts of his interview, Pipes often placed his hands his shorts, perhaps because he was cold and perhaps because he was nervous.  Det. Betz testified that the room was "normal" temperature.[4]  At no time did Pipes appear to be shivering or in substantial physical discomfort.  At one point, during the second part of the interview, Pipes began to rock in his chair a bit and he asked for a cigarette.  Near the end of the second part of the interview, Pipes also stated that he would not wish his situation on anyone and that the arresting officers should have just killed him.

Despite the apparent stress of the situation and his lack of a shirt or shoes, throughout the both parts of his interview, Pipes appeared to be focused on his circumstances and did not appear as though the temperature in the interview room was bothering him or interfering with his ability to understand what was going on.   Pipes asked cogent and relevant questions and provided cogent and relevant responses to the questions posed to him.[5]  Detective Betz testified that Pipes did not appear to be confused or under the influence of drugs or alcohol.  The video recording corroborates Det. Betz's testimony.

Detective Betz and the other interviewing officers advised Pipes that he faced a mandatory life sentence if convicted.  Det. Betz explained that he believed this was true based on

---

[3] As noted, Pipes's interview was conducted in two parts, in two different rooms.  Pipes was restrained with handcuffs when he was moved.  At the outset of the second part of the interview, Pipes remained briefly restrained while the investigators retrieved a handcuff key.

[4] The interviewing agents were wearing t-shirts, which indicates that the interview room was not kept at a low temperature to make Pipes uncomfortable.

[5] Although it is not entirely clear in the hearing record, Pipes had been recently shot (not in connection with is arrest) but had declined medical treatment.  At no point during the interview process did Pipes demonstrate any substantial discomfort due to a prior gunshot wound.

information from the prosecutor. Det. Betz answered Pipes's questions in this regard and read to him portions of the Indictment. Det. Betz also played a recording of an intercepted phone call that implicated Pipes.

At the evidentiary hearing, Det. Betz explained that he did not exaggerate the evidence against Pipes and did not promise Pipes any sentence if he cooperated. The video recording of the interview corroborates Det. Betz's testimony.

Based on the recordings of both parts of the interview, the undersigned finds that the interviewing investigators never made any inappropriate promises or representations to Pipes. To the contrary, the investigators explained to Pipes that it would be up to the prosecutors to decide what, if any, benefit Pipes might receive for any information he might chose to provide. Further, the investigators explained to Pipes that he would be given the opportunity to speak with them again, if he decided he wanted to do so.

Additional findings of fact are included in the following discussion.

## **DISCUSSION, CONCLUSIONS OF LAW, AND RECOMMENDATION**

Pipes asks the Court to suppress any statements he made to law enforcement on July 18, 2018. Pipes first contends that, before he was formally interviewed, he invoked his right to counsel. Apart from any invocation, Pipes also argues that any statements he made were not voluntary due to the coercive conditions associated with his questioning. Regarding conditions, Pipes argues that he was left cold and shirtless in the interrogation room where the investigators pressured him to provide information by telling him that he faced a mandatory life sentence. The government counters that Pipes never invoked his right to counsel, that the investigators truthfully advised Pipes that the charges against him included a mandatory life sentence upon conviction, and that the investigators never made any promises of leniency.

6

**I.      Legal Background**

The law in this area is well-settled.  Statements to law enforcement officers made during custodial interrogation are normally subject to the procedures set out in Miranda v. Arizona, 384 U.S. 436, 477-78 (1966).  United States v. LeBrun, 363 F.3d 715, 720 (8th Cir. 2004) (en banc).  Custodial interrogation means questioning initiated by law enforcement officers after a person has been taken into custody ….\"  Illinois v. Perkins, 496 U.S. 292, 296 (1990) (citation and quotation omitted).  If, after being given Miranda warnings, a defendant agrees to make a statement, the government must show that the waiver was voluntary, knowing, and intelligent for the statements to be admissible at trial.  Colorado v. Connelly, 479 U.S. 157, 169-70, 174 (1986); North Carolina v. Butler, 441 U.S. 369, 373-76 (1979); Miranda, 384 U.S. at 444, 475.  "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination."  LeBrun, 363 F.3d at 724.  See also United States v. Mshihiri, 816 F.3d 997, 1004 (8th Cir. 2016) (quoting LeBrun); United States v. Perry, 714 F.3d 570, 574 (8th Cir. 2013) (quoting LeBrun).  "[I]t is not enough to show that the authorities' representations were the but-for cause of a confession."  LeBrun, 363 F.3d at 724.  "To determine whether a statement is voluntary [the Court] examine[s] the totality of the circumstances, including the 'conduct of the officers and the characteristics of the accused.'"  United States v. Williams, 793 F.3d 957, 962 (8th Cir. 2015) (quoting LeBrun, 363 F.3d at 724).

**II.     Invocation of Right to Counsel**

At the evidentiary hearing, it was established that Pipes was arrested and in custody when he was questioned at the DEA headquarters on July 18, 2018.  Therefore, Miranda applies.

The first issue the Court must resolve is whether Pipes invoked his right to counsel.  The

formal questioning was audio and video recorded (Gov't Exh. 1) and Pipes does not contend that he ever invoked his right to counsel or to remain silent at any point during the recording. Rather, he contends that he invoked his right to counsel before any recording began.

"When a suspect requests counsel during an interrogation, police must cease questioning until counsel has been made available or the suspect reinitiates communication with the police." United States v. Havlik, 710 F.3d 818, 821 (8th Cir. 2013) (citing Edwards v. Arizona, 451 U.S. 477, 484-85 (1981)). A suspect's reference to counsel that is ambiguous or equivocal, however, will not implicate the rule announced in Edwards. See id. (citing Davis v. United States, 512 U.S. 452, 459 (1994)); see also United States v. Giboney, 863 F.3d 1022, 1029 (8th Cir. 2017) (citing United States v. Kelly, 329 F.3d 624, 630 (8th Cir. 2003)).

The undersigned finds that Pipes never invoked his right to counsel. Det. Betz credibly testified that he consulted with his colleagues and they reported to him that Pipes never told anyone that he wanted to speak with an attorney. Det. Betz also testified that, had he known Pipes had made a proper request for counsel, he would have honored that request and Pipes would not have been interviewed.

The video recording of Pipes's questioning (Gov't Exh. 1) corroborates Det. Betz's testimony and provides persuasive circumstantial evidence to support a conclusion that Pipes did not earlier invoke his right to counsel. The video shows that Pipes never mentioned a desire to consult with an attorney. To the contrary, in the video Pipes appears understands his situation and appears willing to discuss his circumstances with the investigators present.

Significantly in this regard, the evidence demonstrates that Pipes was clearly advised of his Miranda rights twice and he twice expressly waived his rights and agreed to answer questions without a lawyer present. Had Pipes unambiguously invoked his right to counsel earlier, one

would expect that he would have mentioned that fact or requested an attorney at some point, but he never did so request. The undersigned finds, therefore, that the government presented sufficient evidence and testimony to support a conclusion that Pipes did not invoke his right to counsel.

### III.     Voluntariness of Statements

The next issue the Court must resolve is whether Pipes's statements to the investigators were voluntary or the product of improper coercion. Again, the video evidence demonstrates that Pipes was properly advised of his Miranda rights and he waived those rights and agreed to speak with the investigators. (See Gov't Exhs. 1, 2) "The requirement that Miranda warnings be given does not, of course, dispense with the voluntariness inquiry." Dickerson v. United States, 530 U.S. 428, 444 (2000). Yet the Supreme Court has recognized that "[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that law the enforcement authorities adhered to the dictates of Miranda are rare." Dickerson, 530 U.S. at 444 (citing Berkemer v. McCarty, 468 U.S. 420, 433 n. 20 (1984)).

As already noted, in "determin[ing] whether a statement is voluntary [the court] examine[s] the totality of the circumstances, including the 'conduct of the officers and the characteristics of the accused.'" Williams, 793 F.3d at 962 (quoting LeBrun, 363 F.3d at 724). Further, a reviewing court in a case such as this will look for coercive police conduct as a predicate to any finding that a statement was not voluntary. See Colorado v. Connelly, 479 U.S. 157, 167 (1986); see also United States v. Galceran, 301 F.3d 927, 931 (8th Cir. 2002); United States v. Robinson, 20 F.3d 320, 322 (8th Cir. 1994). In this case, the totality of the circumstances supports a conclusion that Pipes's statements were voluntary and not the product of any coercive law enforcement conduct.

9

Pipe's has significant experience with the criminal justice system, including the federal criminal justice system—he was serving a term of federal supervised release in our District at the time of his arrest in this matter. While it is true that, at or near the outset of all questioning, Pipes was advised that he faced a mandatory life sentence upon conviction, it is not disputed that such a representation was, in fact, accurate at the time Pipes was questioned. It cannot be that truthfully advising an arrestee of the possible maximum punishment upon conviction amounts to coercive conduct. See LeBrun, 363 F.3d at 724 (explaining that "it is not enough to show that the authorities' representations were the but-for cause of a confession"); cf. also United States v. Thunderhawk, 799 F.3d 1203, 1206 (8th Cir. 2015) (finding no coercive conduct where investigator truthfully told a defendant he would not be arrested after the interview). Additionally, having reviewed the video recording, the undersigned finds that the interviewing detectives were matter of fact in advising Pipes that he faced a possible life sentence—they did not threaten him or raise their voices so as to increase the pressure on Pipes. Similarly, in discussing the possibility of leniency, the detectives made it clear that it would be up to the prosecutor to decide whether any information Pipes provided was sufficient to justify a reduced sentence. There were no promises of leniency conveyed. Finally, the investigators also made it clear to Pipes that he was not facing a "now or never" proposition. Rather, he was advised that he would be given a chance to speak with them again, if he so desired, after he had an attorney and the case was underway.

The undersigned also finds that leaving Pipes shirtless and shoeless, while certainly not ideal, did not in this case did not overcome Pipes's "will and critically impair[] his capacity for self-determination." LeBrun, 363 F.3d at 725 (citation and internal quotations omitted). Again, the video recording provides ample evidence in this regard. During the recording, Pipes can be

10

seen leaning over with his hands in his shorts at various times.  And he requested additional clothing near the beginning of the interview.  But during the majority of the recording, Pipes appeared attentive and not in any significant discomfort.[6]  Pipes asked cogent questions and demonstrated an understanding and awareness of his circumstances and surroundings, so much so that he was moved to another interview room to ensure that any statements he may have made were not overheard by co-defendants in nearby interview rooms.

In summary, Pipes was never threatened or tricked or subjected to any undue pressure at any point during the interview process.  To the contrary, given the size and scope of the indictment, the interviewing agents demonstrated a remarkable lack of pressure.  Based on the totality of the circumstances, the undersigned finds that Pipes's statements were entirely voluntary.

## **CONCLUSION**

The undersigned finds that Pipes was properly advised of his Miranda rights and he voluntarily waived those rights.  The undersigned further finds that Pipes did not invoke his right to counsel.  Finally, the undersigned finds that Pipes's statements were voluntary and not the product of any coercive police conduct.  Accordingly, the undersigned respectfully recommends

---

[6] Pipes may have been experiencing nicotine withdrawal symptoms inasmuch as he began rocking in his chair and requested a cigarette during the second part of his interview.  His cigarette request, however, occurred near the end of the entire interview process.  Furthermore, despite possible discomfort due to nicotine withdrawal or his prior gunshot wound, in the video recording Pipes appears to be level-headed and able to understand his situation.  See United States v. Palmer, 203 F.3d 55, 60-61 (1st Cir. 2000) (confession held voluntary despite defendant's heroin withdrawal where defendant appeared clear-headed); United States v. Cristobal, 293 F.3d 134, 138-41 (4th Cir. 2002) (confession found voluntary despite questioning in hospital, while defendant was on pain medication following emergency surgery); United States v. Reynolds, 367 F.3d 294, 298-99 (5th Cir. 2004) (confession found voluntary despite lack of sleep and drug usage where the defendant was alert and cooperative and officers did not observe defendant to be under the influence of drugs).

11

that the Court deny Pipes's Motion to Suppress Statements.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant Christopher Pipes's Motion to Suppress Statements [ECF No. 574] be **DENIED**.

The parties are advised that they have fourteen (14) days in which to file written objections to the foregoing Report and Recommendation unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).  See also 28 U.S.C. § 636(b)(1)(A), Fed. R. Crim. P. 59(a).

The trial of this matter will be set by the Honorable Catherine D. Perry, Senior United States District Judge, at the conclusion of all pretrial proceedings.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this  21st   day of February, 2020.